**TRI–COUNTY INDUSTRIES, INC., Plaintiff,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

Civil Action No. 94–2014 (JR).

United States District Court, District of Columbia.

Jan. 17, 1996.

Frank J. Emig, Greenbelt, MD, for Plaintiff.

Melvin W. Bolden, Jr., Assistant Corporation Counsel for the District of Columbia, Washington, DC, for Defendants.

### MEMORANDUM

ROBERTSON, District Judge.

Plaintiff Tri–County Industries, Inc., a Maryland corporation in the business of removing underground fuel storage tanks and remediating contaminated soil, alleges that the District of Columbia, and various of its agents acting in their official capacities, illegally suspended the building permit and air quality permit issued to Tri County for the construction of a soil remediation facility. Tri–County asserts claims under 42 U.S.C. § 1983 for violation of its due process rights and for unconstitutional impairment of contract. Tri–County also asserts common law claims. Before the Court are Tri–County's motion for partial summary judgment and the motion of defendants to dismiss or for summary judgment.

### I.  Background

In July 1992, Tri–County applied to D.C.'s Department of Consumer and Regulatory Affairs (DCRA) for the permits necessary to build and operate a new soil remediation facility at 2115 Bryant Street, N.E.[1] On December 11 of the same year, DCRA's Environmental Regulation . Administration (ERA) issued an air quality operating permit that was to be valid upon the issuance of a building permit. On December 22, ERA notified Tri–County that the soil remediation project could proceed without the filing of an environmental impact statement, but that the "project is still governed by all other applicable District and Federal laws and regulations and will be subject to normal reviews during the permitting and construction process." On February 26, 1993, DCRA issued building permit No. B378978, permitting Tri–County to renovate a warehouse to accommodate the soil remediation plant.

On September 7, 1993, when the warehouse renovation work was in progress and Tri–County was awaiting the delivery of its soil remediation equipment, ERA issued a citation charging Tri–County with occupying the site as a soil remediation facility—storing 500 tons of contaminated soil at the site—without a certificate of occupancy. The citation required payment of a $500 fine within fifteen days. Tri–County did not pay the fine.

---

1. During the previous year, under the name of Clean Earth, Inc., Tri–County had operated a soil remediation facility at 1911 New York Avenue, N.E. Tri–County closed that operation, however, after it was found in violation of city zoning laws.

On September 20, 1993, representatives of Tri–County, DCRA, and D.C.'s Department of Housing and Community Development (DHCD), D.C. Councilmember Harry T. Thomas, and some 100 to 200 citizens attended a community meeting called by neighbors of the Bryant Street site to protest the location of the soil remediation facility in their neighborhood. During the meeting, Merrick Malone, a representative of DHCD, stated his agency's concern about the facility's location, in view of the number of existing neighborhood residents and DHCD's plans to locate a new housing project nearby. After hearing that concern and others stated at the meeting, Hampton Cross, then acting director of DCRA, announced that his agency would re-evaluate the potential environmental impact of the soil remediation project on the community and that Tri–County's permit would be suspended pending the re-evaluation.

Two days later, on September 22, DCRA posted a "stop work order" at the plant site.[2] On October 15, DCRA sent a letter to Tri–County requesting more information about the proposed plant and its potential environmental impact on the community. Tri–County did not respond.

On December 6, having received no response from Tri–County, DCRA rescinded the air quality permit and environmental approval letter issued on December 11 and December 22, 1992. DCRA also notified Tri–County that it would move to revoke the building permit (after procedures and a hearing in accordance with local law), and that Tri–County must immediately remove all contaminated soils from the site.

Tri–County sought no relief from the suspension of the building permit on September 20, or the stop work order of September 22, or the DCRA request for more information on October 15, or the rescission and revocation actions of December 6. Nor did Tri–County seek administrative or judicial review of any of these actions. Instead, Tri–County

takes the position today that the September 20, 1993, suspension rendered the project economically unfeasible. Tri–County filed this action on September 20, 1994.

## II. Due Process

The complaint alleges that defendants' September 20 suspension of the building permit and its December 6 rescission of the environmental approval violated the procedural and substantive due process guarantees of the United States Constitution. The undisputed facts provide no support for those allegations, however, and defendants are entitled to summary judgment on plaintiff's due process claims.

### a. Substantive due process

Neither the Supreme Court nor the Court of Appeals for this Circuit has enunciated an objective standard for deciding which governmental lapses are substantive due process violations redressable under 42 U.S.C. § 1983. The Court of Appeals has said, however, that "a plaintiff must at least show that state officials are guilty of grave unfairness in the discharge of their legal responsibilities" and that "only a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights qualifies for protection under § 1983." *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C.Cir.1988). Moreover, "inadvertent errors, honest mistakes, agency confusion, even negligence in the performance of official duties, do not warrant redress under this statute." *Id.* The *Silverman* court cited with approval a First Circuit decision holding that "purposeful, malicious action" is a prerequisite to a substantive due process claim. *See Ortega Cabrera v. Municipality of Bayamon*, 562 F.2d 91, 103 (1st Cir.1977).

■ Applying those tests to the undisputed facts of this case requires a finding that Tri–County's substantive due process rights

---

**2.** The basis and the import of the stop work order are disputed. Tri–County maintains that it was issued because of its failure to pay the fine that was due fifteen days after September 7 and points to the notation "no c of o" on the face of the order—presumably "no certificate of occu-

pancy," which had been the basis for the September 7 citation. Defendants, on the other hand, argue that the stop work order implemented Mr. Cross's announcement at the September 20 meeting that he was temporarily suspending Tri–County's building permit.

were not violated by the District's action. The 500 tons of contaminated soil found at the construction site led to the issuance of a civil citation to Tri–County on September 7. That violation alone, under D.C. law, triggered Director Cross's discretionary authority to revoke plaintiff's building permit summarily, if he determined that the infraction posed a threat to the health and safety of the District's citizens and had not been remedied in the time allotted. *See* D.C.Construction Code § 112.9(3) (1992 Supp.). Even if Director Cross incorrectly assessed the danger to area residents or miscalculated the time within which Tri–County should remove the soil, the temporary suspension of the building permit—which was not a revocation—was at most negligent. Director Cross's conduct was not the substantial and malicious infringement of District law that is the stuff of a due process violation.

■ DCRA's subsequent rescission of Tri–County's environmental approval on December 6 was justified by Tri–County's failure to deal with the civil citation or to address the September 22 stop work order and its further refusal to respond to DCRA's October 15 request for information. *See* D.C. Environmental Policy Act of 1989, D.C.Code § 6–981 et seq. (1995 repl.). Again, even if this decision was in error, it was at most negligent and did not amount to a denial of Tri–County substantive due process rights.

**b. Procedural due process**

Tri–County also complains that the guarantee of procedural due process was denied by Director Cross's impromptu suspension of its building permit without notice and a pre-suspension hearing.

■ The contours of procedural due process are flexible and depend upon the circumstances of a given case. *Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990). At bottom, due process requires some kind of notice and a hearing before the *final* deprivation of a property interest. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982); *Propert v. District of Columbia,* 948 F.2d 1327, 1331 (D.C.Cir.1991). Interim suspensions of licenses and temporary seizures of property may be undertaken without a pre-deprivation hearing, provided that there is a sufficient factual basis for the action and that prompt administrative or judicial review of the merits of the decision is available. *See Barry v. Barchi,* 443 U.S. 55, 64, 99 S.Ct. 2642, 2649, 61 L.Ed.2d 365 (1979); *Cokinos v. District of Columbia,* 728 F.2d 502 (D.C.Cir.1983).

■ The suspension announced by Director Cross at the September 20, community meeting was not a "final deprivation" of Tri–County's asserted property interest in the building permit. Rather, it was akin to the "interim suspension" reviewed in *Barry v. Barch, supra.* What Director Cross said on September 20 was that he would suspend the permit pending further study of the project's potential environmental impact. Formal action to revoke the permit did not begin until December 6, after Tri County failed to respond to DCRA's request for information.

I find on the basis of the undisputed facts both (1) that Director Cross had sufficient grounds upon which to impose an interim suspension for the purpose of gathering further information about the project's environmental impact on the surrounding community, and (2) that Tri–County had adequate post-deprivation remedies at its disposal with which to fight the permit suspension.

It is undisputed that Tri–County was cited for storing some 500 tons of contaminated soil at the Bryant Street facility two weeks prior to the suspension and that Tri–County neither removed the soil nor otherwise responded to the citation prior to the issuance of the stop work order on September 22. Tri–County's history of noncompliance with District environmental, building and zoning laws, the illegal presence of contaminated soil at the site, and the concerns about life safety raised by DCHD were enough for Director Cross, after consultation with his staff, to decide that more information was needed. "At the interim suspension stage, an expert's affirmance, although untested and not beyond error, would appear sufficiently reliable to satisfy constitutional requirements." *Barchi,* 443 U.S. at 65, 99 S.Ct. at 2649.

Tri–County could have sought, but did not seek, an expedited administrative hearing within 72 hours of the suspension. At such a hearing, the burden of justifying the suspension would have been the Director's. D.C.Code § 6–2706 (1995 repl.); D.C.Construction Code § 112.13 (1992 Supp.). If the result of the expedited hearing had been adverse to Tri–County, Tri–County had the right to a review before the D.C. Board of Appeals and Review. D.C.Construction Code § 112.14. Tri–County also could have sought, but did not seek, direct review of the suspension in the D.C. Court of Appeals pursuant to D.C.Code § 1–1510. And Tri–County could have sued, but did not sue, for injunctive relief in D.C. Superior Court or petition for a writ of mandamus in the D.C. Court of Appeals.

Tri–County's failure to pursue any of the post-suspension remedies available to it give a hollow ring to its allegations of injury. Even if Director Cross's decision to suspend the permit was not adequately grounded, Tri–County offers no evidence that the passage of a few days—the amount of time needed for the first level of administrative review—resulted in any of the losses alleged in the complaint. Tri–County's alleged injury from the September 20 suspension was *de minimis* if not ephemeral.

### III. The Remaining Claims

■ Tri–County has not developed or argued the claim for unconstitutional impairment of contract that was set forth in its amended complaint, and in that complaint Tri–County did not allege the existence of any contractual relationship with which the District interfered. Rather, the impairment claim as stated relates only to *prospective* contractual relations—and interference with prospective business advantage is not a constitutional tort. Accordingly, Count II must be dismissed for failure to state a claim upon which relief can be granted. F.R.Civ.P. 12(b)(6).

Having decided to dismiss all the claims over which I have original jurisdiction, I decline to exercise supplemental jurisdiction over plaintiff's common law claims of tortious interference with contract and interference

with prospective business advantage. 28 U.S.C. § 1367(c).

An appropriate order is issued with this memorandum.

### ORDER

For the reasons set in a memorandum issued today, it is this 16th day of January, 1996 **ORDERED** that:

1. Plaintiff's motion for partial summary judgement [# 29] is **denied.** F.R.Civ.P. 56.

2. Defendant's motion for summary judgment [# 32] is **granted** with respect to Count I of the amended complaint. F.R.Civ.P. 56.

3. Count II of the amended complaint is dismissed for failure to state a claim upon which relief can be granted. F.R.Civ.P. 12(b)(6).

4. The Court declines to exercise supplemental jurisdiction over Counts III and IV of the amended complaint. 28 U.S.C. § 1367(c).

5. The case is **dismissed** with prejudice.