**AMERICAN TOWERS, INC., Plaintiff,**

v.

**Anthony WILLIAMS, Mayor of the District of Columbia, et al., Defendants.**

**No. 00–2436 PLF.**

United States District Court, District of Columbia.

June 14, 2001.

Robert Brian Cave, Kelleen McGinnis Scott, Jeremy T. Monthy, Hogan & Hartson, L.L.P., Washington, DC, John Joseph Brennan, III, Robert Clayton Cooper, James A. Allen, Jackson & Campbell, P.C., Washington, DC, for Plaintiff.

Robert C. Utiger, Office of Corp. Counsel, Washington, DC, for Defendants.

## OPINION

PAUL L. FRIEDMAN, District Judge.

On March 13, 2000, the Building and Land Regulation Administration ("BLRA"), a division of the Department of Consumer and Regulatory Affairs ("DCRA") of the District of Columbia government, issued a building permit to American Towers, Inc. ("American Tower") authorizing it to commence construction of a 756–foot telecommunications tower on property American Tower owned on 41st Street near Wisconsin Avenue in the Tenley neighborhood in Northwest Washington, D.C. American Tower promptly began construction. On September 8, 2000, the BLRA issued a Notice of Stop Work Order, but then rescinded it a week later. On September 19, 2000, the District of Columbia Council passed legislation entitled the "Moratorium on the Construction of Certain Telecommunications Towers Emergency Amendment Act of 2000" (the "Moratorium Act"), temporarily prohibiting the issuance of building permits for construction or expansion of telecommunications structures above 200 feet.

On October 5, 2000, the DCRA issued a notice to American Tower indicating the DCRA's intention to rescind and cancel plaintiff's building permit based on five specific errors it said it had belatedly identified in the original permit review process that resulted in an ostensibly erroneous issuance of the permit. *See* Amended Complaint, Ex. 9 ("Notice of Intent to Rescind"). In the notice the DCRA invited American Tower to provide "written statements, evidence, or documentation ... demonstrating that the errors ... did not take place." *Id.* at 4. On October 10, 2000, counsel for American Tower responded by letter, addressing each of the five asserted errors. *See* Amended Complaint, Ex. 10. Later that same day, however, the DCRA responded to American Tower's arguments in a final notice rescinding and canceling the permits. *See* Amended Complaint, Ex. 11 ("Final Notice of Rescission"). The Final Notice effectively halted construction of the 756–foot broadcast tower.

On October 11, 2000, plaintiff filed suit in this Court seeking declaratory and injunctive relief that would allow it to proceed with the construction of the tower, as well as compensatory damages of $150 million and punitive damages of $100 million. In its amended complaint, filed November 20, 2000, plaintiff asserts denial of equal

protection (Count One); taking of property and denial of due process (Count Two); deprivation of federal rights under color of law (Count Three); violation of the Telecommunications Act of 1996, 47 U.S.C. § 332 (Count Four); equitable estoppel (Count Five); confiscatory taking (Count Six); willful violation of District of Columbia law (Count Seven); and wrongful interference with prospective advantage and unfair competition (Count Eight).

On November 1, 2000, the Court held a hearing on and denied plaintiff's motion for immediate injunctive relief, finding that while plaintiff was likely to succeed on the merits of certain of its claims, there was no irreparable harm warranting a preliminary injunction. *See* Order of Nov. 1, 2000. The Court subsequently set a briefing schedule on defendants' motion to dismiss, staying discovery until the motion is resolved, *see* Order of Nov. 17, 2000, and heard oral argument on the motion. In its motion, defendants contend that all of plaintiff's federal claims—denial of equal protection, denial of due process and violation of the Telecommunications Act of 1996—should be dismissed because they fail as a matter of law.[1] Defendants suggest that because these are the only claims that could give this Court original jurisdiction, the Court should dismiss the case in its entirety and allow it to be refiled in the "proper" forum—presumably in the Superior Court of the District of Columbia or before the appropriate administrative

agency or board. Defendants' motion will be granted.

## I. EQUAL PROTECTION

■ In Count One of its amended complaint, American Tower asserts that the District of Columbia's October 10, 2000 decision to rescind its building permit was arbitrary and capricious and that it violated plaintiff's vested property interests by singling it out for adverse treatment in violation of the Equal Protection Clause.[2] American Tower asserts that it is similarly situated to several other companies that did not have their building permits revoked-specifically, three other broadcast towers in the Tenley area that all exceed 600 feet in height-and that the District's actions have had an adverse impact on it.

■ To pass constitutional muster under the equal protection component of the Fifth Amendment's Due Process Clause, an official government action need only bear a rational relationship to a legitimate governmental purpose so long as no suspect or quasi-suspect class is involved. *See City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439–40, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Because American Tower is not a member of a suspect or quasi-suspect class, the Court must consider only whether there was a rational basis for the decision reached by the District to rescind the permit. *See Heller v. Doe,* 509 U.S. 312, 319–20, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993); *Stef-*

---

**1.** Defendants also argue that even if plaintiff's federal claims do not fail, the Court should either abstain from hearing them because they are too intertwined with the state law claims that are at the heart of this suit or dismiss the case because plaintiff failed to exhaust its administrative remedies prior to filing suit. Because the Court will dismiss this case for failure to state a federal claim, the Court will not reach defendants' alternative arguments.

**2.** The Equal Protection Clause does not apply to the District of Columbia, but the Due Process Clause of the Fifth Amendment imposes the same equal protection requirements on the federal government and the District of Columbia as the Fourteenth Amendment's Equal Protection Clause imposes on the states. *See Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

*fan v. Perry,* 41 F.3d 677, 684–85 (D.C.Cir. 1994). In defending against an equal protection claim, the government must offer a rational basis for its conduct, but it has no obligation to present any evidence to sustain the rationality of its decision. *See Steffan v. Perry,* 41 F.3d at 684. Indeed, the burden is on the one attacking the government's action "to negative every conceivable [rational] basis which might support it, whether or not the basis has a foundation in the record." *Id.*

The District of Columbia suggests that there are several rational bases for its decision to rescind American Tower's building permit, chief among them that it must enforce the District of Columbia Height Act, D.C.Code § 5–405(h). Originally enacted by Congress in 1910, the Act requires builders of broadcast towers over 600 feet in height to obtain a waiver of the provisions of the Act before beginning construction, D.C.Code § 5–405(h), and provides that any tower built in violation of Section 5–405(h) constitutes a common nuisance. D.C.Code § 5–408. The District contends that since the owners of all the other towers cited by plaintiff obtained waivers of the Height Act while American Tower did not even attempt to do so, the District did not act arbitrarily, capriciously or unconstitutionally when it revoked American Tower's building permit.

American Tower does not argue with defendants' assertion that a violation of the Height Act would constitute a rational basis to rescind its permit. Rather, plaintiff contends that it received an implied waiver of the Height Act when the District issued it a permit to build a tower over the maximum height restriction—even though plaintiff did not formally request a waiver and even though the building permit it received did not expressly grant a waiver. The Court has some sympathy for this argument, since the District government was fully aware of the height of the tower throughout the process. The application for the building permit submitted to the District described the proposed tower as being 756 feet high, *see* Amended Complaint, Ex. 3; the 756 foot height was highlighted in a memorandum from the D.C. Office of Planning to the Chief of the Zoning Review Branch of the DCRA, *see* Amended Complaint, Ex. 4; and the building permit issued by the DCRA described the tower, including its purpose and its proposed—in plaintiff's view, its authorized—height. *See* Amended Complaint, Ex. 5. Whether on these facts plaintiff may be entitled to substantial money damages on a theory of equitable estoppel or confiscatory taking, however, is irrelevant to plaintiff's equal protection claim.

In determining whether plaintiff has been denied equal protection of the law, this Court must decide only whether defendants have offered a rational basis for its action and whether plaintiff has negatived every conceivable basis that might support the District's action. *See Steffan v. Perry,* 41 F.3d at 684. The District has presented a rational basis for its rescission of plaintiff's building permit—violation of the Height Act—and plaintiff has failed to negative that rational basis. It is not disputed that plaintiff's tower, if built, would violate the Height Act. What is disputed is whether the District implicitly waived the Height Act when it issued the permit. Such a question is not one of constitutional import; it is a question of state law and its resolution is best left to the local courts. The Court concludes that plaintiff has failed to state an equal protection claim.

## II. DUE PROCESS

In Count Two of its amended complaint, American Tower asserts that the Moratorium Act passed by the District of Colum-

bia Council and certain proposed zoning regulations constitute a taking of property without just compensation and thus violate plaintiff's right to substantive due process of law. American Tower suggests that the Moratorium Act violates plaintiff's due process rights because it unfairly authorizes the Mayor to halt construction of the tower and to create a regulatory scheme that could be used later to block the resumption of construction on the tower. *See* Defs.' Motion, Ex. A (Moratorium on the Construction of Certain Telecommunications Towers Emergency Amendment Act of 2000, D.C. Act 13–442) ("Moratorium · Act").[3] It also argues that the proposed zoning regulations, if passed, would retroactively destroy American Tower's zoning interests. *See* Amended Complaint, Ex. 12 (letter from D.C. Office of Planning to D.C. Zoning Commission regarding recommendation that Zoning Commission consider amending zoning regulations regarding standards for antenna towers) ("DCOP Proposal").

■ Plaintiff's due process claim fails as a matter of law because the Moratorium Act and the proposed zoning regulations do not affect any vested property interest American Tower may have in the building permit. No property interest of American Tower is adversely affected by the Moratorium Act because the Act by its express terms has only prospective application. It is not applicable to American Tower because it is a moratorium on the *future* issuance of building permits for telecommunications towers of over 200 feet until the Mayor formulates a policy on the matter. *See* Moratorium Act § 2. Furthermore, contrary to plaintiff's assertion, the legislation issues no legally binding "directives" to the Mayor regarding the tower at issue in this case. The Council expressed concerns about the tower and made requests of the Mayor in a section entitled "Sense of the Council," but it is clear from the plain language of the Act that those expressions of concern and suggestions have no legal effect. *See* Moratorium Act § 3. With respect to the proposed zoning regulations, any claim plaintiff might have with respect to those regulations is not yet ripe, as the regulations have not yet been and may never be approved by the Zoning Commission. *See* DCOP Proposal. For these reasons, the Court finds that plaintiff's substantive due process claim must fail.

■ Although Count Two of plaintiff's amended complaint seems to state only a substantive due process claim, plaintiff argues in its opposition to defendants' motion to dismiss that it is also alleging a violation of its procedural due process rights—specifically, that it was not given sufficient notice or opportunity to be heard before the District of Columbia rescinded its building permit. Since American Tower does not contest the fact that it has been provided with post-deprivation procedures—indeed, it currently is taking advantage of the District's administrative processes by appealing the rescission to the Board of Zoning Appeals and to the Board of Appeals and Review, *see* Defs.' Suppl. Memo. at 8—the question for the Court to decide on this motion is whether the notice sent by the District and the opportunity for hearing provided before rescission were sufficient to comport with due process.

On October 5, 2000, the Department of Consumer and Regulatory Affairs issued a

---

**3.** Exhibit 8 to plaintiff's amended complaint is an early version of the Moratorium Act. The version attached as exhibit A to defendants' motion to dismiss is the final, enacted version of the Act, which differs in certain respects from the version attached to plaintiff's amended complaint.

notice of intent to rescind and cancel plaintiff's building permit based on five errors it said it had belatedly identified in the original permit review process that resulted in an ostensibly erroneous issuance of the permit. *See* Amended Complaint, Ex. 9. With that Notice, American Tower was informed of the specific grounds on which its permit might be rescinded and was offered an opportunity to respond by a date certain. *See id.* While American Tower submitted a response to the Notice, *see* Amended Complaint, Ex. 10, District officials found its response to be insufficient to refute the grounds asserted. *See* Amended Complaint, Ex. 11.[4] The DCRA therefore rescinded the building permit on October 10, 2000 without a hearing, effectively halting construction of plaintiff's broadcast tower indefinitely. *See id.*

Although the procedure provided was not as extensive as plaintiff would have liked, and while plaintiff disagrees with the facts and the law upon which the District relied before issuing its Final Notice rescinding the permit, the Court concludes that the District gave American Tower sufficient notice and opportunity to be heard at a meaningful time and in a meaningful manner, which is all that due process requires. *See Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *UDC Chairs v. Board of Trustees of the University of the District of Columbia,* 56 F.3d 1469, 1472 (D.C.Cir. 1995). The notice sent to American Tower by the DCRA on October 5, 2000 set forth five reasons why the District believed the permit was improperly issued in the first place and explained why it would rescind it if American Tower did not provide "written statements, evidence, or documentation" by noon on October 10 sufficient to persuade DCRA that its reasons for rescission were invalid. *See* Amended Complaint, Ex. 9. American Tower thus was offered an opportunity to be heard, albeit in writing rather than in person, sufficiently in advance of any final action by DCRA. In the Court's view, this notice was sufficient to adequately inform American Tower of the proposed decision and the reasons for it; both the notice and the opportunity to respond were given "at a meaningful time and in a meaningful manner." *Propert v. District of Columbia,* 948 F.2d 1327, 1332 (D.C.Cir.1991) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)); *see UDC Chairs v. Board of Trustees of the University of the District of Columbia,* 56 F.3d at 1472–74. Because plaintiff was offered and took advantage of this pre-deprivation procedure and was also advised of its right to post-deprivation hearings before the Board of Zoning Appeals and the Board of Appeals and Review, *see* Amended Complaint, Exs. 9 & 11, the Court cannot find that defendants violated plaintiff's right to procedural due process.

The D.C. Circuit's decision in *Tri County Industries, Inc. v. District of Columbia,* 104 F.3d 455 (D.C.Cir.1997), does not alter this conclusion. In *Tri County,* the court of appeals found that plaintiff's right to procedural due process had been violated when the District of Columbia suspended plaintiff's building permit—a scenario bearing a sufficient resemblance to the one here to warrant serious consideration. *See*

---

4. In the Final Notice of Rescission the DCRA addresses each of plaintiff's responses to the asserted grounds for rescission. *See* Amended Complaint, Ex. 11. As defendants point out in their motion to dismiss, plaintiff's response to the Notice of Intent to Rescind provided "virtually no factual information challenging the factual predicate of the Notice and very little argument on the Notice's legal analysis." Defs.' Motion at 12. Plaintiff "merely threatened legal action and presented legal arguments and conclusions." *Id.* at 11.

*Tri County Industries, Inc. v. District of Columbia*, 104 F.3d at 460–62. As defendants point out in their post-hearing brief, however, the facts in *Tri County* are distinguishable from those in this case. In *Tri County*, the DCRA suspended Tri County's permit *sua sponte* at a public hearing based on inaccurate information and did not give Tri County any opportunity to dispute the facts upon which the suspension was predicated. *Id.* at 460–61. Applying the *Mathews* test, the D.C. Circuit found that the District's actions deprived plaintiff of its right to procedural due process. *Id.* at 461–62. In this case, by contrast, plaintiff was provided adequate pre-deprivation due process before the permit was rescinded. *See supra* at 33–34. The court of appeals' decision in *Tri County*, while instructive, therefore is not directly relevant to this case.

Finally, plaintiff suggests that its due process rights were violated when the District incorrectly interpreted and applied the Height Act and when it improperly circumvented District of Columbia regulations regarding the revocation of the permit. Such challenges to the District's interpretation of and compliance with its own statutes and regulations may or may not have merit, but the resolution of those claims does not implicate American Tower's due process rights. *See supra* at 31.

Count Two of plaintiff's amended complaint therefore will be dismissed.[5]

## III. TELECOMMUNICATIONS ACT

In Count Four of its amended complaint, plaintiff asserts that the District of Columbia's decision to rescind American Tower's building permit and the D.C. Council's moratorium legislation violate several provisions of the Telecommunications Act of 1996, 47 U.S.C. § 332. Specifically, plaintiff argues that the District's actions unreasonably discriminate against providers of functionally equivalent services (an alleged violation of 47 U.S.C. § 332(c)(7)(B)(i)); that they are not supported by substantial evidence (an alleged violation of Section 332(c)(7)(B)(iii)); and that they violate the Act's prohibition of any regulation on the placement of wireless facilities based upon environmental effects (an alleged violation of Section 332(c)(7)(B)(iv)).

While the Telecommunications Act of 1996 generally preserves the zoning authority of state and local governments with respect to decisions regarding the placement, construction and modification of "personal wireless service facilities," *see* 47 U.S.C. § 332(c)(7)(A), the Act places five specific limitations on how the state or local government may exercise that authority.[6] Defendants argue that these

---

5. Count Three of plaintiff's amended complaint asserts that defendants deprived American Tower of equal · protection (Count One) and due process (Count Two) under color of law. Since the two constitutional claims underlying Count Three are dismissed, Count Three will be dismissed as well.

6. The three limitations at issue in this case are the following:

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof

(I) shall not unreasonably discriminate among providers of functionally equivalent services; and (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services....

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of

statutory limitations do not apply in this case, however, because the facility at issue is not primarily a "personal wireless service facility" and because its actions only affected plaintiff's primary purpose for building the tower—the provision of high definition television ("HDTV") broadcast services. The District asserts that since its actions did not affect the construction of a personal wireless service facility or the provision of personal wireless services within the meaning of Section 332, *see* 47 U.S.C. § 332(c)(7)(C) (defining "personal wireless services" and "personal wireless service facilities"), its ability to regulate the facility at issue is not limited by Section 332(c)(7)(B) of the Telecommunications Act.

 Both parties acknowledge that, if built, plaintiff's tower would provide both HDTV services *and* personal wireless services. The parties also agree that while an antenna or antennas will be added to the tower to provide personal wireless services, the primary purpose of the tower—and, more importantly, the reason for its height—is to provide HDTV services. What the parties dispute is whether the existence of even a single personal wireless services antenna on a structure such as plaintiff's, regardless of the structure's other purpose or purposes, automatically subjects that structure to the statutory zoning limitations of the Telecommunications Act and therefore brings it outside the regulatory authority of the District. The answer to that question in light of the facts presented here is clearly no.

Congress simply could not have intended that any structure that has personal wireless communications as a secondary purpose is beyond the zoning authority of the state or local government. The reason for the excessive height of the tower in this case is the fact that it must be tall enough to provide HDTV services, not personal wireless communications services. The District's concerns with the construction of plaintiff's tower stem from its proposed height and thus from the fact that it is primarily an HDTV tower, not a personal wireless service facility. The District's actions with respect to plaintiff's tower do not prevent it from constructing a "personal wireless service facility" on American Tower's site or from providing "personal wireless services." Unfortunately for plaintiff's claim of federal jurisdiction, the zoning limitations set forth in Section 332(c)(7)(B) of Telecommunications Act do not apply in this case; plaintiff simply is not entitled to the protections from local regulation that the Act may provide in other contexts.

Even if the limitations of the Telecommunications Act did apply, it does not appear that the District violated any of those provisions. As discussed previously with respect to plaintiff's equal protection claim, defendants' actions neither "unreasonably discriminated among the providers of functionally equivalent services" nor had "the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i). It also is clear that since the factual and legal reasoning behind the District's decision to rescind the permit was explained to plaintiff in writing, *see* Amended Complaint, Exs. 9 & 11, and since that explanation indicates that the District's actions were supported by substantial evidence in the record before it, the requirements of Section 332(c)(7)(B)(iii) were satisfied. Finally, while Section 332(c)(7)(B)(iv) of the Act prohibits any regulation on the placement

---

personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

47 U.S.C. § 332(c)(7)(B).

of wireless facilities based upon environmental effects, the restriction by its explicit terms applies only to regulations on facilities based on concerns over radio frequency emissions. Because the District's expressed concern was over falling ice and the resulting safety risk, the District's action would appear to fall outside of Section 332(c)(7)(B)(iv)'s prohibition. The Court therefore will dismiss Count Four of plaintiff's amended complaint.

Since all of plaintiff's federal claims fail as a matter of law, they will be dismissed with prejudice. Plaintiff's non-federal claims are quintessentially local in nature; they therefore will be dismissed without prejudice to their being refiled in a more appropriate forum. *See* 28 U.S.C. § 1367(c)(3). An Order of Dismissal consistent with this Opinion will issue this same day.

SO ORDERED.

### *ORDER OF DISMISSAL*

For the reasons stated in the Court's Opinion issued this same day, it is hereby

ORDERED that defendants' motion to dismiss is GRANTED. Plaintiff's federal claims (Counts One, Two, Three and Four) are DISMISSED with prejudice. Plaintiff's non-federal claims (Counts Five, Six, Seven and Eight) are DISMISSED without prejudice to their being refiled in a more appropriate forum; it is

FURTHER ORDERED that this case is DISMISSED and the Clerk of the Court shall remove it from the docket of the Court. This is a final appealable order. *See* Rule 4(a), Fed. R.App. P.

SO ORDERED.