Gregory N. DUCKWORTH,
et al., Appellants

v.

UNITED STATES of America, acting by
and through, Gary Locke, in his offi-
cial Capacity as Secretary of the De-
partment of Commerce, et al., Appel-
lees.

No. 10–5189.

United States Court of Appeals,
District of Columbia Circuit.

April 21, 2011.

Patrick Francis Flanigan, Esquire, Law
Office of Patrick Flanigan, Swathmore,
PA, for Appellants.

Gregory N. Duckworth, Law Office of
David B. Lamb, Washington, DC, pro se.

Mark R. Haag, Esquire, Robert Parke
Stockman, U.S. Department of Justice, R.
Craig Lawrence, U.S. Attorney's Office,
Washington, DC, for Appellees.

Before: ROGERS, TATEL and
KAVANAUGH, Circuit Judges.

### JUDGMENT

PER CURIAM.

This appeal was considered on the rec-
ord from the United States District Court
for the District of Columbia and on the
briefs filed by the parties. *See* Fed.
R.App. P. 34(a)(2); D.C.Cir. Rule 34(j). It
is

**ORDERED AND ADJUDGED** that the
district court's grant of summary judg-
ment be affirmed.

Pursuant to D.C. Circuit Rule 36, this
disposition will not be published. The
Clerk is directed to withhold issuance of
the mandate herein until seven days after
resolution of any timely petition for re-
hearing or rehearing en banc. *See* Fed.
R.App. P. 41(b); D.C.Cir. Rule 41.

### MEMORANDUM

On appeal from the grant of summary
judgment, Gregory N. Duckworth (and his
two former commercial fishing vessels)
challenge the imposition of a $100,000 fine
and 48 months' suspension of his commer-
cial fisherman's vessel and operator per-
mits pursuant to the Magnuson–Stevens
Fishery Conservation and Management
Act, 16 U.S.C. §§ 1801 ff. The district
court's opinion sets out the underlying
facts. *Duckworth v. United States ex rel.
Locke,* 705 F.Supp.2d 30, 34–39 (D.D.C.
2010). Suffice it to say, the sanctions were
imposed for conduct in 2006 following prior
violations of the Act in 2002, 2003, and
2005. The latter violations were settled
and a $50,000 fine imposed for a 2002
violation; Duckworth failed to pay the fine
by the August 1, 2006 deadline and his
permits were suspended until the fine was
paid. The 2006 conduct involved eight vio-
lations concerning Duckworth's fishing
with suspended permits and an April 2006
false statement in his application to renew
the permit for one of his boats. An admin-
istrative law judge, after a trial-like hear-
ing, discredited Duckworth's explanations,
imposed the maximum statutory fines
($130,000 for each violation), and perma-
nently revoked his permits. Upon discre-
tionary review, the Administrator of the
National Oceanic and Atmospheric Admin-
istration reduced the total fines to $100,000
and the permanent revocation to 48
months' suspension.

Duckworth now challenges the fine and
suspension, without challenging the under-

lying fact finding, on three grounds: the Administrator's decision was arbitrary and capricious; the Inspector General's Report supported his claim of excessiveness; and the sanctions were excessive because his case should be treated like a maritime case. None is persuasive.

1. Each decision maker made findings based on statutory factors. Duckworth's contention that there was no fact finding or opportunity for him to challenge the sanctions is belied by the record. He relies on internal, non-binding civil penalty guidelines, *see, e.g., Pharaon v. Bd. of Governors of Fed. Reserve Sys.,* 135 F.3d 148, 156 (D.C.Cir.1998), but does not show the final decision was inconsistent with the guidelines. The government responds as well that the sanctions were reasonable given the seriousness of the violations, Duckworth's prior history of violations, his culpability as shown by his intentional submission of a forged document, and his ability to pay.

2. The Inspector General Report, indicating administrative management controls were needed and the high fines imposed in the Northeast region where Duckworth fishes were excessive, was issued two months after the Administrator's final decision, and, in any event, did not address specific cases. Duckworth can show no abuse of discretion by the district court in failing to supplement the record with the Report. *See, e.g., Am. Wildlands v. Kempthorne,* 530 F.3d 991, 1002 (D.C.Cir. 2008).

3. In contending the sanction was constitutionally excessive, Duckworth relies on Supreme Court precedent addressing punitive damages awarded by juries in tort cases. He is incorrect in arguing his is a maritime case governed by federal common law; the sanction is governed by statute and its regulations. His reliance on *Exxon Shipping Co. v. Baker,* 554 U.S. 471, 489–515, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008), is misplaced. In that case, the Supreme Court addressed "punitive damages in maritime law, which falls within a federal court's jurisdiction to decide in the manner of a common law court, subject to the authority of Congress to legislate otherwise if it disagrees with the judicial result," *id.* at 489–90, 128 S.Ct. 2605, and held that a *jury's* award of punitive damages may not exceed the amount of compensatory damages in a federal maritime case, *id.* at 513, 128 S.Ct. 2605. This case, however, involves a civil penalty authorized by the Magnuson–Stevens Act and its regulations, *see* 16 U.S.C. § 1858(a); 15 C.F.R. § 6.4(f)(14) (2007), rather than a punitive damages jury award, thus rendering the *Exxon* 1:1 ratio rule inapplicable. For the same reason, Duckworth's citation to other decisions setting forth punitive damages tests, *see State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003); *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), is unavailing.

Duckworth's due process argument, appropriately viewed, falls under the Excessive Fines Clause of the Eight Amendment. *See Tri County Indus., Inc. v. Dist. of Columbia,* 104 F.3d 455, 459 (D.C.Cir. 1997) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims." (citations and internal quotation marks omitted)). Citing *United States v. Bajakajian,* 524 U.S. 321, 334, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), Duckworth correctly observes that "[t]he amount of the [penalty] must bear some relationship to the gravity of the offense that it is designed to punish." But

he fails to show the lack of such a relationship in his case, upon *de novo* review. *See id.* at 336, 118 S.Ct. 2028. With respect to the $100,000 civil penalty, "[t]he amount [of the fine] is neither indefinite nor unlimited," *Grid Radio v. FCC*, 278 F.3d 1314, 1322 (D.C.Cir.2002), and "the penalty is proportional to [the] violation and well below the statutory maximum," *Pharaon*, 135 F.3d at 157. The final amount of the civil penalty as reduced by the Administrator was less than ten percent of the $1.04 million statutory maximum authorized at the time. *See* 16 U.S.C. § 1858(a); 15 C.F.R. § 6.4(f)(14) (2007). Although the permit suspensions were intended to "act as a deterrent," *F/V Twister, Inc.*, 2009 WL 4829742 (NOAA App. Nov. 24, 2009), and "[d]eterrence ... has traditionally been viewed as a goal of punishment,"

*Bajakajian,* 524 U.S. at 329, 118 S.Ct. 2028, the permit suspensions were constitutionally permissible because they were not "grossly disproportional to the gravity of [Duckworth's] offense[s]," *id.* at 334, 118 S.Ct. 2028. To the extent Duckworth's challenge sounds in procedural due process, that claim likewise fails: "Because the assessed penalty falls far below the statutory maximum, [Duckworth] cannot claim that he lacked constitutionally adequate notice." *Pharaon,* 135 F.3d at 157.