**TRI COUNTY INDUSTRIES, INC., Appellant,**

v.

**DISTRICT OF COLUMBIA, et al., Appellees.**

No. 99–7028.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 12, 1999.

Decided Jan. 18, 2000.

Rehearing and Rehearing En Banc Denied March 8, 2000.*

---

* Circuit Judge Tatel did not participate in this matter.

Frank J. Emig argued the cause for the appellant.

Donna M. Murasky, Assistant Corporation Counsel, Office of the Corporation Counsel, argued the cause for the appellees. Robert R. Rigsby, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, Office of the Corporation Counsel, were on brief for the appellees.

Before: EDWARDS, Chief Judge, SILBERMAN and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

This appeal arises from proceedings determining what damages, if any, appellant Tri County Industries, Inc. (Tri County) should be awarded to compensate for what this court previously determined to be the District of Columbia's (District) violation of its fifth amendment right to procedural due process. *See Tri County Indus., Inc. v. District of Columbia,* 104 F.3d 455, 460–62 (D.C.Cir.1997). Following the first of two trials, the jury awarded $5,000,000. The trial court then granted a new trial, *nisi* remittitur to $1,000,000, which was refused. At the second trial, the district court admitted evidence excluded from the first and the jury returned nominal damages of $100. Tri County challenges the court's order granting the District's alternative motion for a new trial as well as several evidentiary rulings in the second trial and requests reinstatement of the first award or, in the alternative, a new trial due to allegedly erroneous evidentiary rulings during the second trial. For the reasons set forth below, we reverse the district court's order of July 23, 1998 and reinstate the original jury verdict of $5,000,000.

## I.

On February 26, 1993 Tri County obtained a building permit from the District authorizing conversion of an empty warehouse into a facility for its business of decontaminating soil tainted with oil and other hazardous materials. While securing the permit, Tri County also obtained an air quality permit as well as a waiver of the required environmental impact statement. Even several months after it obtained the necessary permits, however, it had not begun operating due to equipment delivery delays. On September 7 it received a District citation for storing soil at the facility without the required certificate of occupancy.[1] Tri County neither removed the soil nor paid the fine; consequently, the District issued a stop-work order on September 22. Tri County did not challenge the citation or order. Its failure to respond led to an order by the District Department of Consumer and Regulatory Affairs (DCRA) dated October 13, 1993 purporting to suspend Tri County's building permit.

The building permit had already been suspended on September 20, however, when, prompted by a groundswell of community opposition to the project, Hampton Cross, acting DCRA director, summarily suspended Tri County's building permit.

---

1. A certificate of occupancy is issued when renovation of a structure has been completed in conformity with the earlier application for a building permit and the building is found to be in compliance with applicable zoning regulations and the building code. *See* 12 DCMR § 118, 39 DCR 8711–12.

The DCRA sent Tri County a letter requesting further information on October 15, 1993 to which Tri County did not respond. On December 6 the DCRA sent another letter, this time rescinding the environmental impact statement waiver and threatening imminent revocation proceedings on the building permit. Tri County's only response was to remove the soil that had caused the initial citation. Tri County's counsel advised it that an appeal likely would be influenced by politics given the strong community opposition and that he could not guarantee when such an appeal would be heard. Given the high rental cost of the property in question and the necessity of purchasing, without delay, costly equipment in high demand, Tri County estimated the costs of an appeal at nearly $1,000,000. With no assurance of a prompt hearing and the prospect of a politically influenced review process, Tri County abandoned its project.

Tri County brought suit under 42 U.S.C. § 1983 and succeeded in its challenge to the September 20 suspension of its building permit when this court reversed the district court's dismissal, holding that the suspension violated Tri County's right to procedural due process. *See Tri County Indus.*, 104 F.3d at 460–62. We remanded for consideration of damages. *See id.* at 462. The subsequent proceedings in the district court are at issue in this appeal.

The first trial began on April 14, 1998. Tri County presented evidence of its costs already incurred, evidence of lost profits through the testimony of a mechanical engineer and the report of an economist and evidence as to the local market demand for a soil treatment facility through the testimony of a geologist at an environmental consulting firm. The District largely accepted the testimony, often failing to object or seriously cross-examine. Instead, the District relied on its argument that Tri County failed to mitigate its damages when it refused to provide the information the DCRA requested and when it declined to challenge the stop-work and suspension orders. The District also sought to demonstrate that Tri County might not have

been allowed to operate its facility because community opposition, arising largely out of concern over the facility's effect on the health and safety of the community, would derail the regulatory procedures. Hindering its argument was the trial court's exclusion or striking of evidence relating to health and safety concerns. *See* Joint Appendix (JA) 186–89. The court found the District's permitting process had resolved the issues as a matter of law. *See id.* at 182–83, 189. In the end, the jury awarded $5,000,000.

The trial court denied the District's post-trial motion for judgment as a matter of law but granted the alternative motion for a new trial, *nisi* remittitur to $1,000,-000. Addressing the District's primary argument, the court ruled that the District had to establish both the standard for reasonable mitigation under the circumstances and that Tri County failed to meet it. The District failed to sustain that burden, particularly in light of Tri County's evidence that it would have to spend nearly $1,000,000 to recoup its expenses of $536,421. The court reversed field, however, in reviewing the award for future damages which, assuming the $536,421 in costs were awarded, constituted $4,463,579 of the $11,628,174 figure Tri County presented to the jury. Emphasizing that Tri County did not "invest[ ] a penny to seek reinstatement of the unlawfully suspended building permit," the court ruled that the District need not have established a reasonableness standard because Tri County's failure to mitigate was unreasonable *per se*. District Court's Memorandum Order filed July 23, 1998 (Memorandum Order), at 2. The court also found the lost profits evidence should not have been considered by the jury without the District having the chance to prove that the facility might not have been allowed to operate. Accordingly, the court found the estimate of lost profits "too speculative and remote" and, in any event, found the award "grossly excessive." *Id.*

Tri County declined the $1,000,000 remittitur and a second trial commenced on January 29, 1999. In this trial, the district court allowed the District to admit the health and safety evidence originally excluded. This time the District challenged Tri County's experts and offered the testimony of three new witnesses, one of whom refuted Tri County's estimate of future profits. Another witness discussed a potential zoning bar to the facility and the third discussed health and safety hazards associated with soil remediation. The second jury awarded Tri County nominal damages of $100.

## II.

■ We review the district court's grant of a new trial for abuse of discretion. *See Langevine v. District of Columbia,* 106 F.3d 1018, 1023 (D.C.Cir.1997) (citing *Hutchinson v. Stuckey,* 952 F.2d 1418, 1420–21 (D.C.Cir.1992)). "[A] more searching inquiry is required" if the new trial is granted than if denied, however, because of "the concern that a judge's nullification of the jury's verdict may encroach on the jury's important fact-finding function." *Id.* at 1023 (quoting *Vander Zee v. Karabatsos,* 589 F.2d 723, 729 (D.C.Cir.1978)).

In its post trial order, the trial court stated three reasons for granting a new trial: (1) Tri County's failure to mitigate; (2) the speculativeness in Tri County's projections of future profits; and (3) the "grossly excessive" jury verdict. Memorandum Order at 2. The court also thought it had erred in its evidentiary rulings excluding evidence related to community opposition to the project. *See* Memorandum Order at 2 (plaintiff's expert testimony should not have been received "without allowing [the District] to adduce proof that plaintiff's soil remediation facility would never have been permitted to

operate"). Tri County challenges each ground.

■ First, the court found Tri County's failure to expend any resources to seek reinstatement of its building permit *per se* unreasonable in light of the $11,628,174 it claimed in lost profits. *See id.* Tri County contends that the determination of whether a party satisfied its duty to mitigate, a question that turns on what action was reasonable under the circumstances, *see, e.g., Berger v. Iron Workers Reinforced Rodmen, Local 201,* 170 F.3d 1111 (D.C.Cir.1999); *Lennon v. United States Theatre Corp.,* 920 F.2d 996 (D.C.Cir.1990), is a jury question. Here, we agree with Tri County that its alleged failure to mitigate was an issue properly submitted to the jury. *See Hilord Chem. Corp. v. Ricoh Elecs., Inc.,* 875 F.2d 32, 38–39 (2d Cir.1989); *Waldorf v. Shuta,* 142 F.3d 601, 623–24 (3d Cir.1998). Moreover, failure to mitigate is an affirmative defense and the party asserting it bears the burden of demonstrating the opposing party's failure to act reasonably under the circumstances. *See Lennon,* 920 F.2d at 1000; *see also Mark Keshishian & Sons, Inc. v. Washington Square, Inc.,* 414 A.2d 834, 842 n. 19 (D.C.1980) (burden of showing mitigation is on party raising issue) (citing *Camalier & Buckley–Madison, Inc. v. Madison Hotel, Inc.,* 513 F.2d 407, 419–20 n. 92 (D.C.Cir.1975)).

Tri County created a jury issue when it offered an explanation for its failure to challenge the DCRA's suspension order or otherwise pursue administrative remedies. Its explanation included evidence that it believed suggested the reviewing body, the District's Board of Appeals and Review, might not have acted impartially due to political influence and that an appeal would have been indefinitely slow and expensive.[2] Moreover, a jury justifiably could have

2. Tri County's lawyer (in 1993) testified that Cross told him that the Board of Appeals and Review would act at the direction of the District's Mayor and the Mayor's chief of staff. Tri County introduced Cross's deposition testimony indicating he had met with the Mayor and members of the community opposition following the suspension of the permit. Tri County's lawyer also testified that it would have taken eight to twelve months to resolve the matter administratively. JA 76–77.

found it reasonable for Tri County not to contest the September 22 stop-work order and subsequent suspension resulting from the failure to pay the fine given the pre-existing September 20 suspension. The District argues simply that the evidence it presented regarding Tri County's failure to mitigate "was firmer by far." Brief of Appellee at 30. Tri County responds that it is improper to now assess the relative strength of the parties' showings. Indeed, the trial court properly gave the failure to mitigate issue to the jury and properly instructed the jury on that issue:

> [T]he law requires that an injured party take all the reasonable steps it can to avoid further injury and reduce its loss. Tri County may not recover damages for any portion of its injury which it could have avoided through the exercise of reasonable care and prudence.... The District asserts that Tri County by failing to pay the $500 fine ... and by failing to appeal the stop work order, is not entitled to any damages.

JA 193. Thus, to the extent the district court based its new trial decision on the mitigation issue, it abused its discretion in declaring *ex post* that Tri County's failure to pursue administrative remedies to reinstate its permit was *per se* unreasonable, thereby withdrawing the mitigation issue from the jury. *See generally Tatum v. Morton,* 562 F.2d 1279, 1283 (D.C.Cir. 1977) ("[T]he district court's *per se* approach of imposing an absolute duty to mitigate was not sound.").

■ The trial court also found that Tri County's evidence of lost profits was "too speculative and remote" and that the award of less than half of the amount Tri County estimated was "grossly excessive." Memorandum Order at 2. Where, as here, the fact of injury has been established and the defendant's action (suspension of the building permit) affected the plaintiff's ability to present actual revenue and cost figures to support a lost profits projection,

the applicable standard for proving lost profits damages is the one this court enunciated in *Samaritan Inns, Inc. v. District of Columbia,* 114 F.3d 1227 (D.C.Cir.1997):

> Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person.... In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. Thus, while a plaintiff seeking to recover lost profits must ordinarily prove the fact of injury with reasonable certainty, proof of the amount of damages may be based on a reasonable estimate. Although a court will not permit a plaintiff to recover damages based on "mere speculation or guess," the fact that an estimate is uncertain or inexact will not defeat recovery....

114 F.3d at 1234–35 (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544 (1931)) (citations omitted).

■ Tri County produced evidence indicating it sustained lost profits of $11,-628,174. The evidence included the testimony of eight witnesses[3] and ranged from projections of tons of contaminated soil the facility would treat per hour and the number of hours it would operate per day to estimates of equipment and labor costs. With expert testimony regarding the accessible market for soil remediation and a comparison of service rates for similar operations, an economist projected the profitability of Tri County's facility. Their respective opinions were left largely unchallenged by the District. Regardless whether the estimates were on the high

---

**3.** The witnesses included its President, Glenn Selzer, its Vice President and its CPA. In addition, a chemical engineer, a remediation expert, a financial economist, a mechanical engineer and an expert in soil remediation testified as to Tri County's costs and lost profits.

end, that is, "uncertain or inexact," *Samaritan Inns*, 114 F.3d at 1235, they were sufficiently well-founded to avoid characterization as "mere speculation or guess." *Id.*

Moreover, we question the trial court's finding that the award "shock[ed] the judicial conscience." Memorandum Order at 2. Tri County presented evidence that its costs amounted to $536,421 and its lost profits amounted to$11,628,174. The jury awarded $5,000,000, less than half of the total amount claimed and, for that matter, less than half of the future profits estimate standing alone. The award was within the "reasonable range within which the jury may properly operate." *Langevine*, 106 F.3d at 1024.

■ As demonstrated above, the trial court tried to cover all bases in its order granting a new trial but the order reveals that the court's real concern was its exclusion of evidence regarding health and safety issues which may have led to community resistance and, perhaps, regulatory barriers to Tri County's project. For example, while declaring the award grossly excessive, the district court expressed its dissatisfaction with its original evidentiary rulings:

> [T]he jury's award ... shocks the judicial conscience, particularly in view of the realistic prospect, which I did not permit defendants to prove at trial, that there would be continued community resistance to increased dump truck traffic ... and a very real likelihood that the District of Columbia would have closed down the remediation facility ... or that it never would have been permitted to commence operations at all.

Memorandum Order at 2–3; *see also id.* at 2 (plaintiff's expert testimony should not have been received "without allowing [the District] to adduce proof that plaintiff's soil remediation facility would never have been permitted to operate").

In the excerpt above, the district court alluded to the District's argument under *Carey v. Piphus*, 435 U.S. 247, 266–67, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), that a plaintiff who suffers a procedural due process violation is entitled only to nominal damages if he would have suffered the same "injury" absent the violation. Thus, the District argues that here the procedural violation caused no compensable injury because the action taken, suspension of the permit, was justified even if improperly executed. The District claimed that Tri County's damages were minimal because the facility either would not have become operational or would not have been operational for long due to community resistance.

■ The trial court excluded the District's health and safety evidence under Rule 403 and determined that the permitting process disposed of these issues as a matter of law. *See* JA 178, 189. The District argues that the evidentiary rulings practically negated its argument under *Carey* that the project would have been halted anyway. Despite its reliance on this argument, the District never met the trial court's repeated injunction to show how the health and safety issue would have triggered additional regulatory procedures or otherwise allowed the District to rescind its earlier approval. *See* JA 172; *see also id.* at 168–69, 172–75, 186–87. In short, the District failed to show that community concern would be brought to bear on Tri County's operation, specifically through the regulatory process. Accordingly, the district court did not abuse its discretion in excluding the evidence. In light of our findings that Tri County's evidence was properly before the jury and the District's evidence was properly excluded, we conclude that the district court, in granting a new trial based on a revised view of its original rulings, did abuse its discretion.[4] *See Langevine*, 106 F.3d at

---

4. In light of our holding, we need not reach Tri County's alternative grounds for reversal based on the second trial.

1023 (a "more searching inquiry" is particularly necessary "when the motion [for new trial] is granted on the ground that the verdict is against the weight of the evidence").

For the foregoing reasons, we reverse the district court's order of July 23, 1998, reinstate the original jury verdict of $5,000,000 and vacate the verdict and judgment resulting from the second trial.

*So ordered.*