Jimmy L. DUNCAN, Appellee,

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellant.**

**No. 99–7073.**

United States Court of Appeals, District of Columbia Circuit.

Argued En Banc Sept. 27, 2000.

Decided March 2, 2001.

Bruce P. Heppen argued the cause for the appellant. Cheryl C. Burke, Robert J. Kniaz and Mark F. Sullivan were on brief.

Sally Dunaway and Melvin Radowitz were on brief for amici curiae American Association of Retired Persons and National Employment Lawyers Association. Paula A. Brantner entered an appearance.

Ann Elizabeth Reesman was on brief for amicus curiae Equal Employment Advisory Council.

Bruce M. Bender argued the cause for the appellee. Suzanne L. Lawrence entered an appearance.

Bill Lann Lee, then Assistant Attorney General, Jessica D. Silver and Thomas E. Chandler, Attorneys, United States Department of Justice, Philip B. Sklover, Associate General Counsel, and Barbara L. Sloan, Attorney, Equal Employment Opportunity Commission, were on brief for amici curiae United States of America and The Equal Employment Opportunity Commission.

Before: EDWARDS, Chief Judge; SILBERMAN,* WILLIAMS, GINSBURG, SENTELLE, HENDERSON, RANDOLPH, ROGERS, TATEL and GARLAND, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

Concurring opinion filed by Circuit Judge RANDOLPH, with whom Circuit Judges STEPHEN F. WILLIAMS and SENTELLE join.

Concurring opinion filed by Circuit Judge TATEL.

Dissenting opinion filed by Chief Judge HARRY T. EDWARDS.

---

* Judge Silberman took senior status on November 1, 2000 but continues to participate as a member of this *en banc* court pursuant to 28 U.S.C. § 46(c)(2).

KAREN LeCRAFT HENDERSON, Circuit Judge:

Appellant Washington Metropolitan Area Transit Authority (WMATA) challenges the district court's denial of its post-trial motion for judgment as a matter of law in this discrimination action brought by appellee Jimmy Duncan under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, (ADA). Because Duncan offered no significantly probative evidence below of the number and types of positions available in his local job market so as to demonstrate that his back impairment substantially limits his ability to work, we hold that he failed to establish he was "disabled" under the ADA. The district court therefore erred in denying WMATA's motion.

Duncan worked at WMATA for seven years. He began his career there as a custodian in May 1986 and became an Automated Fare Collector (AFC) parts runner in November 1991. In December 1992 Duncan was involuntarily transferred to the Elevator/Escalator branch [ELES] where he was again employed as a parts runner. As a custodian, Duncan was required to lift between 75 and 100 pounds, as an AFC parts runner only about 30 pounds and as an ELES parts runner over 100 pounds. On December 19, 1992, his third night in ELES, Duncan, who had suffered a series of back injuries between 1989 and 1992, reinjured his back. As a result he was unable to continue in his heavy lifting ELES job. Duncan's supervisor informed him no light lifting jobs were then available and Duncan was placed briefly on sick leave and then on leave without pay. He twice applied for a vacant AFC parts runner position, in March and July 1993, but without success.

In August 1993 Duncan received a letter from his supervisor instructing him to meet with WMATA's Associate Medical Director, Dr. Mary O'Donnell, and to take with him all of his relevant medical records, including a statement from his treating physician. Duncan consulted his treating physician who referred him to a neurologist. Because the neurologist was out of town, Duncan was unable to obtain a statement from him before his August 19, 1993 meeting with O'Donnell. At the meeting O'Donnell told Duncan he would probably be discharged, apparently because he had failed to produce documentation of his current condition. Duncan was discharged in October 1993. In February 1994 he took a part–time light lifting position with Hertz Corporation.

On December 22, 1994 Duncan filed suit in the district court alleging WMATA violated the ADA by discharging him on account of a disability and by failing to reasonably accommodate his disability. After a five-day trial the jury returned a verdict on May 27, 1997, finding WMATA violated the ADA as alleged and awarding Duncan compensatory damages of $125,000 on his wrongful termination claim and $125,000 on his reasonable accommodation claim. WMATA filed a posttrial motion for judgment as a matter of law or, alternatively, for a new trial. The district court denied the motion in a memorandum opinion and order filed March 26, 1998. In subsequent orders the court awarded Duncan reinstatement with back pay, attorney's fees and costs and pre-trial interest. On appeal WMATA challenges the denial of its post-trial motion and the various awards.

■■■ "This court reviews *de novo* the trial court's denial of a motion for judgment as a matter of law or, in the alternative, for a new trial." *Curry v. District of Columbia,* 195 F.3d 654, 658–59 (D.C.Cir. 1999) (citing *Swanks v. WMATA,* 179 F.3d 929, 933 (D.C.Cir.1999)). We will not disturb a jury verdict "unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree on the verdict." *Id.* at 659 (quoting *Smith v. Washington Sheraton Corp.,* 135 F.3d 779, 782 (D.C.Cir.1998)). Evidence supporting the verdict, however, must be "more than merely colorable; it must be significantly probative." *Id.* (quoting

*Smith,* 135 F.3d at 782). Applying this standard, we conclude Duncan failed to produce significantly probative evidence that he was "disabled" under the ADA and that the verdict and awards below must therefore be vacated.

In an ADA case with no direct evidence of discrimination and where the defendant denies that its decisions were motivated by the plaintiff's disability, this court applies the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Marshall v. Federal Express Corp.,* 130 F.3d 1095, 1099 (D.C.Cir.1997). Under the *McDonnell Douglas* framework an ADA plaintiff must prove that "he had a disability within the meaning of the ADA, that he was 'qualified' for the position with or without a reasonable accommodation, and that he suffered an adverse employment action because of his disability." *Swanks v. WMATA,* 179 F.3d 929, 934 (D.C.Cir.1999). The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A). Throughout this litigation, Duncan has maintained that his degenerative disc disease, which limits his lifting to no more than 20 pounds, fits this definition because it is a physical impairment that limits his major life activity of "working." WMATA responds that Duncan failed to establish at trial that his back condition in fact "substantially limits" his ability to work.[1] We agree.

In *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), the United States Supreme Court provided guidance on the meaning of the phrase "substantially limits":

> The ADA does not define "substantially limits," but "substantially" suggests "considerable" or "specified to a large degree." . . .

> When the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs. . . . To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

527 U.S. at 491–92, 119 S.Ct. 2139 (citation omitted). This passage makes clear that whether an impairment substantially limits the major life activity of working depends primarily on the availability of jobs for which the impaired person qualifies. The Supreme Court further instructed that this is "an individualized inquiry," *id.* at 483, 119 S.Ct. 2139 (citing *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)), and that courts should consider such factors as "the geographical area to which the individual has reasonable access and 'the number and types of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area, from which the individual is also disqualified,' " *id.* at 491–92, 119 S.Ct. 2139 (citing & quoting 29 C.F.R. pt. 1630, App.

---

1. WMATA concedes that Duncan has a physical impairment and, until its *en banc* brief, did not dispute that working is a "major life activity" under the ADA. In light of our holding that Duncan did not demonstrate his impairment substantially limits his work activity, we need not and do not consider WMATA's belated assertion in its supplemental *en banc*

briefs that working is not a major life activity but we assume *arguendo* that it is. *Cf. Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (making same assumption, while noting that "there may be some conceptual difficulty in defining 'major life activities' to include work").

§ 1630.2(j)(3)(ii)(A), (B)[2]). In sum, to establish substantial limitation of working activity under the ADA, a plaintiff must allege and prove that in his particular circumstances, taking into account the appropriate factors, his impairment prevents him from performing a "substantial class" or "broad range" of jobs otherwise available to him.

Duncan asserts he sufficiently demonstrated substantial limitation through expert medical testimony that his back condition and lifting restriction are permanent and through evidence of his age, limited skills, education and experience and of his inability to find comparable employment after his discharge. The cited evidence tells us little or nothing, however, about the number and types of jobs in the Washington, D.C. area for which Duncan is qualified and which are therefore available to him. There may be numerous local positions that do not require heavy or medium lifting—such as the AFC parts runner position at WMATA for which Duncan twice applied after his injury and for which he acknowledges in his complaint he was qualified. *See* Amended Complaint at 3, 4 (filed March 6, 1996). Or there may be very few such jobs. The jury was left in the dark with no significantly probative evidence addressing the factors set out in *Sutton*.[3] Duncan points to his own testimony that he made "inquiries" about or applied for truck driving jobs but that they all required heavy lifting.[4] This sparse anecdotal evidence, however, cannot support the required jury finding that Duncan was substantially limited in his ability to find work because his impairment disqualified him from a substantial class or broad range of jobs in the Washington area. At most Duncan's testimony shows that he was not qualified for the particular kind of job—truck driver—for which he chose to apply. It tells us nothing about whether he was qualified for the many other jobs in the Washington metropolitan employment pool. See *Sutton*, 527 U.S. at 492, 119 S.Ct. 2139 ("To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice."). Without evidence of the number and kinds of jobs available to Duncan the jury had no basis to find he was disqualified from a substantial class or broad range of them. Because Duncan failed to offer evidence demonstrating he was substantially impaired in working, the jury's liability verdict cannot stand.

In concluding that Duncan failed to meet his evidentiary burden, we hold that the ADA requires a plaintiff in Duncan's position to produce some evidence of the number and types of jobs in the local employment market in order to show he is disqualified from a substantial

---

2. The *Sutton* Court declined to resolve whether deference is owed to the Equal Employment Opportunity Commission's ADA regulations, 527 U.S. at 480, 119 S.Ct. 2139, but quoted this regulation's factors approvingly, *id.* at 491–92, 119 S.Ct. 2139.

3. We note that social security disability cases have found lifting restrictions not to constitute a disability. *See, e.g., Cruze v. Chater*, 85 F.3d 1320, 1322 (8th Cir.1996) (affirming denial of benefits to claimant who "possessed the residual functional capacity to perform the physical exertional and nonexertional requirements of work except for lifting and carrying of more than 20 pounds occasionally or 10 pounds frequently" and who, according to a vocational expert, therefore "could still perform work as a light cleaner, office helper or messenger, or mail clerk," which positions

"exist in significant numbers in the national economy"); *Lee v. Sullivan*, 988 F.2d 789, 792 (7th Cir.1993) (affirming denial of benefits to claimant based on vocational testimony that person "with a tenth grade education, average to borderline intellect, and depression who can perform sedentary work with an option for alternate sitting and standing ... could be a cashier in a convenience store, a security guard, and a parking lot attendant" and that "there were approximately 1,400 of these positions in the greater Milwaukee metropolitan area which has a work force of 750,000").

4. Duncan testified he could not remember "any other types of jobs or specifics about any types of jobs that [he] applied for." Joint App. 136–38.

class or broad range of such jobs; that is, the total number of such jobs that remain available to the plaintiff in such a class or range in the relevant market must be sufficiently low that he is effectively precluded from working in the class or range. *See Sutton,* 527 U.S. at 491–92, 119 S.Ct. 2139. The approach we adopt is consistent with most other circuits'. *See Santiago Clemente v. Executive Airlines, Inc.,* 213 F.3d 25, 32–33 (1st Cir.2000) (concluding former flight attendant failed to show temporary hearing loss was disability under ADA because she offered "no evidence of how many jobs call for this ability, or that she was precluded from any class of jobs"); *Webb v. Clyde L. Choate Mental Health & Dev. Ctr.,* 230 F.3d 991, 997 (7th Cir.2000) (upholding summary judgment against psychologist suffering from severe asthma, osteoporosis, and a weakened immune system because he "ha[d] not presented evidence that his condition prevents him from performing a class of jobs"); *Taylor v. Nimock's Oil Co.,* 214 F.3d 957, 961 (8th Cir.2000) (concluding former cashier with 40 hour week and 10 pound carry limit did not establish disability because she "presented no evidence to create a genuine issue of material fact about whether she could perform a class of jobs with her restrictions") (citing *Berg v. Norand Corp.,* 169 F.3d 1140, 1145 (8th Cir.1999); *Helfter v. United Parcel Serv., Inc.,* 115 F.3d 613, 617–18 (8th Cir.1997)); *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 645 (2d Cir.1998) ("Without specific evidence about 'the kinds of jobs from which [an] impaired individual is disqualified,' the jury could not perform the careful analysis that is necessary to determine that [a plaintiff] was substantially limited in his ability to work.") (quoting *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 723 (2d Cir.1994)); *Snow v. Ridgeview Med. Ctr.,* 128 F.3d 1201, 1207 (8th Cir.1997) (holding "general lifting restriction imposed by a physician, without more, is insufficient to constitute a disability within the meaning of the ADA" with regard to major life activity of working); *see also Williams v. Channel Master*

*Satellite Sys., Inc.,* 101 F.3d 346, 349 (4th Cir.1996) ("hold[ing], as a matter of law, that a twenty-five pound lifting limitation—particularly when compared to an average person's abilities—does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity"); *Ray v. Glidden Co.,* 85 F.3d 227, 229 (5th Cir.1996) ("[I]nability to perform heavy lifting does not render a person substantially limited in the major activities of lifting or working."); *McKay v. Toyota Motor Mfg., U.S.A., Inc.,* 110 F.3d 369, 373 (6th Cir.1997) (holding woman with carpal tunnel syndrome and 20–pound lifting not disabled because "at best, her evidence supports a conclusion that her impairment disqualifies her from only the narrow range of assembly line manufacturing jobs that require repetitive motion or frequent lifting of more than ten pounds"). *But see Wellington v. Lyon County Sch. Dist.,* 187 F.3d 1150, 1155 (9th Cir.1999) (holding evidence that impairment disqualified plaintiff from "metal fabrication, welding, ... heavy activities, carpentry, ... the use of a variety of tools to do maintenance and repairs, et cetera" coupled with his anecdotal testimony he had to quit one plumbing job because he was "in too much pain to even continue" raised triable issue of fact on disability); *cf. Burns v. Coca–Cola Enters., Inc.,* 222 F.3d 247 (6th Cir.2000) (upholding determination plaintiff was disabled because of district court's finding impairment "precluded him from performing at least 50% of the jobs that he was qualified to perform given his educational background and experience" where finding was apparently based solely on 23–pound lifting limit and limited education and work experience); *Mullins v. Crowell,* 228 F.3d 1305, 1314 n. 18 (11th Cir.2000) ("[E]xpert vocational evidence, although instructive, is not necessary to establish that a person is substantially limited in the major life activity of working. Furthermore, a plaintiff could testify from his or her own extensive job search whether other jobs that he or she

could perform were available in the geographical area."). Further, the evidentiary burden we place on plaintiffs is not onerous. They need not necessarily produce expert vocational testimony, although such evidence might be very persuasive. In the proper case simple government job statistics may suffice.[5] We leave it to counsel in future ADA cases to explore the various forms such evidence may take. Here we hold only that Duncan failed to produce any sort of significantly probative evidence on the subject.

For the preceding reasons, we reverse the district court's denial of WMATA's motion for judgment as a matter of law. We further vacate the judgment on the jury verdict entered May 29, 1997 and the district court's post-trial orders awarding reinstatement, back pay, attorney's fees and costs and prejudgment interest.

*So ordered.*

RANDOLPH, Circuit Judge, with whom Circuit Judges WILLIAMS and SENTELLE join, concurring:

I agree with Judge Henderson's opinion for the court. Although I also agree that the court should not decide whether working is a "major life activity" within the meaning of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12102(2), *see* maj. op. at 1111 n. 1, I think we should recognize the difficulties the issue presents.

The Supreme Court in *Sutton v. United Air Lines,* 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), also avoided deciding the question by "[a]ssuming without deciding that working is a major life activity...." The Court's statement indicates that it thought the question was an open one. Before *Sutton* this was far from certain. *School Board of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), a case arising under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, stated in dicta that a person could

be considered a handicapped individual if the person suffered from a physical impairment such as cosmetic disfigurement. Even though this sort of impairment "might not diminish a person's physical or mental capacities," it "could nevertheless substantially limit that person's ability to work as a result of the negative reactions of others to the impairment." 480 U.S. at 283, 107 S.Ct. 1123. To support its point, the Court cited regulations implementing the Rehabilitation Act, which listed "working" as a major life activity. *Id.* at 283 n. 10, 107 S.Ct. 1123.

A section of the ADA provides that "nothing in this chapter shall be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973 ... or the regulations issued by Federal agencies pursuant to such titles." 42 U.S.C. § 12201(a). On the basis of this section, *Bragdon v. Abbott,* 524 U.S. 624, 632, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), held that the Court must "construe the ADA to grant at least as much protection as provided by the regulations implementing the Rehabilitation Act."

There may be ways of explaining the apparent inconsistency between *Sutton* on the one hand, and *Bragdon* and *Arline* on the other. *Sutton,* for instance, referred to EEOC regulations suggesting that "working be viewed as a residual life activity, considered, as a last resort, only '[i]f an individual is not substantially limited with respect to any other major life activity.'" 527 U.S. at 492, 119 S.Ct. 2139 (emphasis omitted) (quoting 29 C.F.R. pt. 1630, App. § 1630.2(j) (1998)). Sutton also identified "a conceptual difficulty": if a person claims to be excluded from work because of his impairment, it is circular for him to answer—when asked the nature of his impairment—"exclusion from work." *Id.*

---

5. Such statistics are readily available on the worldwide web. For example, a number of different reports on job requirements in spe-

cific local labor markets are available at low cost from the website www.occustats.com.

Another set of problems stems from these circumstances: to make "working" a major life activity is to create a residual category, one that matters only if the individual is not suffering from some serious physical or mental impairment. (If the individual is so suffering there is no need to consider working as a separate category. *See Taylor v. Phoenixville Sch. Dist.,* 174 F.3d 142, 152 (3d Cir.1999); *McAlindin v. County of San Diego,* 192 F.3d 1226, 1233 (9th Cir.1999).) When "working" is used in this way, the existence of a disability will necessarily turn on factors other than the individual's physical characteristics or medical condition. To illustrate, suppose there is an economic downturn and unemployment is high. Then more people will be found to be disabled as compared with a period when the gross domestic product is growing and unemployment is low. Why? Because the less likely it is that a person can find work the more likely that he is substantially limited in the major life activity of working—that in other words he suffers from a disability. *See Sutton,* 527 U.S. at 491, 119 S.Ct. 2139. One must wonder whether people considered disabled in a poor economy can become not disabled if the economy turns around and more jobs become available. One must wonder as well how this can be squared with the ADA's express purpose of supplying "clear, strong, *consistent,* enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b) (italics added). Geographic disparity also cannot be avoided. Take two identical individuals with identical impairments working for the same company. One works in a sparsely populated rural area, the other in a large metropolis. The individual in the rural area would wind up being classified as disabled under the ADA more readily than the person in the major metropolitan area where more jobs are available.

From the employer's point of view, the standards will hardly appear "clear," 42 U.S.C. § 12101(b). When "working" is the allegedly impaired major life activity, how is the employer to determine whether the employee is disabled (and thus entitled to a reasonable accommodation)? The employer certainly cannot tell just by looking at the employee, or by consulting medical records, or by insisting upon a physical examination. Disability will depend on the job market, on whether there are jobs in some undefined region "utilizing an individual's skills (but perhaps not his or her unique talents)," *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139, jobs for which the employee is qualified. Exactly how the employer is to make that determination is far from certain. Suppose the employer does not acquire the information. Could the employer still be found to have discriminated "because of" a disability, as the ADA requires for liability, if the employer does not know the employee's job prospects? *See* 42 U.S.C. § 12112(a).

The problems just mentioned, and others, need to be considered before we decide whether to join the two other circuits which, after *Sutton,* treat "working" as a major life activity under the ADA. *See Bartlett v. New York State Bd. of Law Exam'rs,* 226 F.3d 69, 80 (2d Cir.2000); *EEOC v. R.J. Gallagher Co.,* 181 F.3d 645, 654 (5th Cir.1999).

TATEL, Circuit Judge, concurring:

I agree that the verdict in Duncan's favor cannot stand. I write separately to explain my view of the precise nature of the burden that *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999),· places on ADA plaintiffs.

*Sutton* describes the standard for proving that an impairment " 'substantially limits' . . . the major life activity of working":

When the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs. Reflecting this requirement, the EEOC uses a specialized

definition of the term "substantially limits" when referring to the major life activity of working:

"significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

... To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

527 U.S. at 491–92, 119 S.Ct. 2139. This passage gives plaintiffs attempting to prove disability on the basis of a substantial limitation in the major life activity of working a choice: they may demonstrate that their impairment excludes them from "*either* a class of jobs *or* a broad range of jobs in various classes." As the penultimate sentence explains, plaintiffs attempting to prove exclusion from a "class of jobs" must show that their impairment disqualifies them from jobs utilizing their skills. In *Sutton*, for example, the Supreme Court said that airline pilots who have impairments that preclude them from working as global pilots but who can nonetheless hold "a number of other positions utilizing [their] skills, such as regional pilot and pilot instructor" cannot claim to be substantially limited in the major life activity of working. *Id.* at 493, 119 S.Ct. 2139. According to the final sentence in the *Sutton* passage, plaintiffs attempting to prove exclusion from a "broad range of jobs"— the second of the two options—must show that there is not a "host" of different types

of jobs available to them. As an example of a person who might claim to be precluded from a broad range of jobs, the EEOC Interpretive Guidance describes an individual who "has an allergy to a substance found in most high rise office buildings, but seldom found elsewhere, that makes breathing extremely difficult." 29 C.F.R. pt. 1630, App. § 1630.2(j). Of course, after *Sutton*, such a person would also have to show that jobs not in high rise buildings are unavailable, leaving some doubt as to whether plaintiffs would any longer attempt to make such a claim.

Duncan claimed only exclusion from a class of jobs. To prove his case, Duncan thus needed to show that the class of jobs from which he alleged preclusion was "broad" or "substantial," and not limited to jobs utilizing his "unique talents." *Sutton*, 527 U.S. at 491–92, 119 S.Ct. 2139. Presenting evidence of his back injury and lack of formal training or education, he proved only his inability to handle jobs requiring heavy lifting. As I read *Sutton*, he also had to show that he could not handle the broader class of jobs requiring manual labor, of which heavy lifting is but a subclass.

Duncan could have satisfied his burden of proof by producing specific evidence either that he applied unsuccessfully for non-lifting manual labor jobs (thus demonstrating that he was unqualified for those jobs for some other reason) or that most manual labor jobs require heavy lifting. He failed to do either, testifying only as follows:

Q: When you were on unemployment did you make any inquiries with any employers that had vacancies for truck driver positions to determine if you could do the job?

A: Yes. I would—I would check the vacancies—I mean the unemployment, and I would call places, and jobs that I thought I could do I would ask them what the job entailed, and if it was to the point where I know I wouldn't be

able to do a lot of lifting I wouldn't—I wouldn't inquire no more about it.

Q: Did any of the truck ... driving types of jobs that you applied for, did they require heavy lifting?

A: Yeah, most all of them basically.

Q: Mr. Duncan, in addition to truck driving positions that you may have made some inquiries about, do you recall any other types of jobs or specifics about any types of jobs that you applied for during that period of unemployment?

A: I can't remember.

Trial Tr. at 130–31 (May 19, 1997). Absent more "significantly probative" evidence, *see Smith v. Washington Sheraton Corp.*, 135 F.3d 779, 782 (D.C.Cir.1998), no reasonable jury could have concluded that Duncan was unable to perform manual labor, i.e., that he was excluded from a substantial class of jobs. From his testimony, the jury could have concluded that all truck driving jobs require heavy lifting, but the record contains nothing from which the jury could have concluded that other manual labor jobs likewise require heavy lifting.

While I thus agree that the verdict in Duncan's favor cannot stand, I think it important to emphasize that although *Sutton* requires Duncan to have proven an inability to perform manual labor, it does not also require him to have shown an inability to qualify for non-manual labor jobs in the area in which he lives. *Sutton* would require such evidence of plaintiffs seeking to prove disability based on exclusion from a "broad range of jobs," but that requirement does not apply to plaintiffs like Duncan who seek to prove disability on the basis of exclusion from a "class of jobs." 527 U.S. at 492; 119 S.Ct. 2139. Requiring such proof of plaintiffs like Duncan, moreover, would convert the ADA inquiry from asking whether plaintiffs are precluded from classes of jobs to whether, as in the Social Security disability benefits context, they are unable to work at all. *See* 42 U.S.C. § 423(d)(1)(A) (defining "dis-

ability" under the Social Security Act as "inability to engage in *any substantial gainful activity* by reason of any medically determinable physical or mental impairment") (emphasis added). Consider a surgeon claiming to be disabled under the ADA because a physical or mental impairment precludes him from a class of jobs. Like the airline pilot plaintiffs in *Sutton*, although it would not be enough for the surgeon to show that he could no longer perform surgery—he would need to show that he was unable to practice medicine at all—nothing in *Sutton* requires that he demonstrate the absence of a "host" of non-medical jobs that he could handle, such as office administration, food service, or maintenance. 527 U.S. at 492, 119 S.Ct. 2139. In other words, the surgeon could establish disability under the ADA by showing only that, as *Sutton* puts it, "jobs utilizing [his] skills (but perhaps not his ... unique talents)" were unavailable. *Id.*

So too Duncan. He need not have demonstrated preclusion from non-manual labor jobs; proving exclusion from the class of jobs requiring manual labor would have been enough. Because he failed to show even this, I concur.

HARRY T. EDWARDS, Chief Judge, dissenting:

Congress passed the Americans with Disabilities Act ("ADA") because, "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101 (a)(2)(1994). The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1) & (2)(1994).

The ADA generally provides that

no covered [employer] shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112 (a)(1994). A "qualified individual with a disability" includes persons "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8)(1994). And "reasonable accommodation[s]" include "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position." 42 U.S.C. § 12111(9)(1994).

In light of the general purposes and standards enunciated in the ADA, appellate review of this case should have been a simple matter. The plaintiff/appellee, Jimmy Duncan, was in a job that *everyone*— including his attending physician, doctors retained by WMATA, and his supervisors—knew that he could not perform *because of his physical disability*. He presented medical evidence of his physical disability to WMATA. When a WMATA job opened up that he could perform, parts runner in Automated Fare Collection, he applied to be transferred to the position. He had held the parts runner job previously; he was indisputably qualified to perform the job; and the work required was within his current physical ability. He also had seniority among the competing candidates. He was denied the job, however, for no reason. Under the ADA, WMATA should have offered the parts runner job to Duncan, as a reasonable accommodation to his existing disability.

During oral argument before the court, WMATA's counsel was asked to address the following hypothetical:

Assume an employee is disabled because, due to a freak accident, one of his legs is amputated. As a result of this disability, the employee is unable to perform his job with WMATA. Subsequently, there is a job opening at WMATA in a position that the disabled employee previously has held and is currently capable of performing (because it requires no appreciable standing or walking). The amputee requests a transfer to the job. Is WMATA required to accommodate the disabled employee?

WMATA's counsel conceded that, under the ADA, the employer would be obliged to accommodate the disabled employee by offering him the job. Duncan's request merited an equivalent response.

The problem in this case is that, under the ADA, a disability is defined as "a physical or mental impairment that *substantially limits one or more of the major life activities* of [an] individual." 42 U.S.C. § 12102(2)(A) (1994) (emphasis added). Congress has delegated to the Equal Employment Opportunity Commission ("EEOC") the responsibility for issuing regulations to enforce the proscription against discrimination in employment under the ADA. 42 U.S.C. § 12116 (1994). In assuming this responsibility, the EEOC has promulgated regulations providing that "major life activities" include

caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

29 C.F.R. § 1630.2(i) (1999). It is fairly easy to determine whether a person is disabled due to a physical impairment that substantially limits his ability to walk. The same cannot be said about physical impairments (beyond, say, walking, seeing, hearing, speaking, and breathing) that substantially limit a person's ability to work. Thus, the EEOC has explained that the substantial limitation inquiry with respect to "working" entails an inability to work in a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable train-

ing, skills, and abilities. 29 C.F.R. § 1630.2(j)(3)(i).

The disabled employee in the aforecited hypothetical is covered by the major life activity of "walking," so he need only show that his walking is substantially impaired in order to pursue a claim under the ADA. Duncan's ADA claim, however, rests on the major life activity of "working," so he faces a tougher burden. This disparate burden is hard to fathom. Both men are physically impaired and their impairments limit their abilities to work; and both men easily can be accommodated. Nonetheless, Duncan is forced to show that he is unable to work in a broad class of jobs or a broad range of jobs in various classes in order to claim relief, whereas the hypothetical employee need only show an inability to perform a single job. Given the purposes of the ADA and the similarities in the two situations, it is difficult to find a meaningful difference between the hypothetical employee and Duncan. Both the hypothetical employee and Duncan should be accommodated because of their disabilities.

As the majority and separate opinions make clear, however, "working" is a disfavored basis upon which to rest a definition of *major life activities.* Indeed, even the Supreme Court, albeit in dicta, has questioned whether "working" should be considered a major life activity. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). There are undoubtedly some conceptual difficulties in viewing work as a major life activity. For example, an expansive view of work as a major life activity might allow a person to claim a disability and discrimination under the ADA if he/she is allegedly denied work for a physical impairment, such as cosmetic disfigurement, which does not rise to the level of an underlying handicap. In this sense, "work" is arguably over-inclusive when viewed as a major life activity, at least when considered in conjunction with the principal purposes of the ADA. Nevertheless, it is hard to believe

that Congress intended to deny a claimant like Duncan—a truly disabled person, who has undisputed job limitations due to his physical impairment *and can easily be accommodated* (much the same as with the hypothetical employee)—redress under the ADA because his claim rests on "work" as a "major life activity."

The result reached by the majority in this case invariably will make "work" impermissibly under-inclusive when viewed as a major life activity, in a way that appears to defy Congress' mandate in enacting the ADA. The Supreme Court may have some doubts about work as a major life activity, but the Court has not declared the EEOC's regulation unlawful. Unless and until this happens, claimants like Duncan are entitled to full protection of the statute. In short, as long as working is a major life activity, an employer's responsibility to offer a reasonable accommodation to a disabled employee like Duncan should be taken seriously.

## I. ANALYSIS

Quite apart from the foregoing analytical problems raised by this case, I respectfully dissent from the judgment of the majority because this is a case that no judge should take from a jury. The jury considered the evidence presented by Duncan and WMATA; there were no erroneous instructions given to the jury; and the jury weighed the evidence and found in favor of the plaintiff. In nullifying the jury verdict, the majority has impermissibly encroached on the jury's important fact-finding function, which is something that neither a trial judge, *see Tri County Industries, Inc. v. District of Columbia,* 200 F.3d 836, 840, 842–43 (D.C.Cir.2000), *cert. granted,* —— U.S. ——, 121 S.Ct. 29, 147 L.Ed.2d 1051 (2000) (No. 99–1953), nor an appellate panel, *see Boodoo v. Cary,* 21 F.3d 1157, 1161 (D.C.Cir. 1994), is permitted to do.

The majority opinion is especially suspect, because the judgment is based on a re-weighing of the evidence that was be-

fore the jury. The case that Duncan presented to the jury was adequate to survive a judgment as a matter of law, so there is no basis for this court to second-guess the jury. And it is somewhat unnerving to notice that this court showed unbridled solicitude for the jury's role when considering a highly debatable claim in *Tri County Industries* (in which the city of Washington, D.C., was required to pay $5 million on a jury verdict) and now see that same solicitude missing here in a case involving a claim under the ADA.

## A. Standard of Review

In considering whether to take a verdict away from a jury and grant a judgment as a matter of law, a court may not substitute its judgment for the jury's judgment in factual determinations. *See Boodoo*, 21 F.3d at 1161 (D.C.Cir.1994). As the Court recently reiterated, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Whether a judge is inclined in favor of one possible interpretation of the evidence, over another plausible interpretation of the evidence, is of no moment. This court may enter a judgment as a matter of law only when the evidence presented at trial admits of a single inevitable interpretation. "It is long settled that 'the jury's verdict will withstand challenge unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree on the verdict.'" *Swanks v. Washington Metro. Area Transit Auth.*, 179 F.3d 929, 933 (D.C.Cir.), *cert. denied*, 528 U.S. 1061, 120 S.Ct. 614, 145 L.Ed.2d 509 (1999) (quoting *Scott v. District of Columbia*, 101 F.3d 748, 753 (D.C.Cir. 1996)). This high threshold has not been met in this case. Based on the evidence presented at trial, the jury reasonably determined that Duncan's physical impairment substantially limited him in the major life activity of working. Despite the clear prohibition that a court must not replace a jury as trier of fact, WMATA's case turns on asking this court to re-weigh the evidence. At the very opening of his oral argument, WMATA's counsel urged this court to weigh the medical reports and physicians' testimony offered at trial so as to find that Duncan was able to perform medium lifting. The argument was one that simply asked this court to make findings of fact against the plaintiff, something that we have no authority to do. Indeed, much of WMATA's argument to this court was presented as if the judges on the appellate bench were in a jury box. As the following analysis indicates, there is no basis here to take this case from the jury.

## B. Disability under the ADA

As noted above, under the ADA, a disability is "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102 (2)(A) (1994). And EEOC regulations provide that "work" is a major life activity. 29 C.F.R. § 1630.2(i) (1999). Unless and until the Supreme Court decides otherwise, working remains a major life activity under the ADA. *See Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sinkler v. Midwest Property Management, Ltd.*, 209 F.3d 678, 684 n. 1 (7th Cir.2000); *Equal Employment Opportunity Comm'n v. R.J. Gallagher Co.*, 181 F.3d 645, 654–55 (5th Cir.1999).

EEOC regulations explain that a physical impairment substantially limits an individual's ability to work when the individual is

significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, partic-

ular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). In addition, the following factors may be considered in assessing whether a physical impairment substantially limits a person's ability to work:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

*Id.* § 1630.2(j)(3)(ii).

There is no magical legal standard for measuring substantial limitation. Clearly, the inability to perform lifting does not automatically constitute an impairment that substantially limits a person's ability to work. *See, e.g., Thompson v. Holy Family Hosp.,* 121 F.3d 537, 539 (9th Cir. 1997) (holding nurse who was restricted in her ability to lift but was able to work in other nursing jobs was not substantially limited). However, the inability to participate in significant lifting, taken in the context of an individualized analysis, may substantially limit an individual's ability to work. In evaluating substantial limitation, a jury must engage in a context-dependent assessment of the plaintiff's personal characteristics, education, work history, and the available job market in order to assess whether the plaintiff is excluded from a class of jobs or a broad range of jobs across classes. *See, e.g., Wellington v.*

*Lyon County Sch. Dist.,* 187 F.3d 1150, 1155 (9th Cir.1999) (finding issue of material fact exists regarding disability where plaintiff's education was limited to a high school degree and some trade school training, his work experience was limited to manufacturing, construction, heavy maintenance and plumbing, and no evidence was presented that jobs were available in the job market for a person with comparable abilities); *Quint v. A.E. Staley Mfg. Co.,* 172 F.3d 1, 11–12 (1st Cir.1999) (rejecting judgment as a matter of law against plaintiff where plaintiff had only a high school education and a work history of heavy physical labor, and physician testified plaintiff was precluded from a lot of jobs); *Mondzelewski v. Pathmark Stores, Inc.,* 162 F.3d 778, 784 (3d Cir.1998) (explaining that "an individual's training, skills, and abilities are taken into account in determining whether the individual is substantially limited in the major life activity of working"); *Webb v. Garelick Mfg. Co.,* 94 F.3d 484, 487 (8th Cir.1996) (explaining "[a] person's expertise, background, and job expectations are relevant factors in defining the class of jobs used to determine whether an individual is disabled"); *Cochrum v. Old Ben Coal Co.,* 102 F.3d 908, 911 (7th Cir.1996) (noting "[t]he physical restrictions Cochrum's physician placed upon him—no overhead work, heavy lifting, or pulling and pushing out from his body—might apply to a broad range of jobs, and are more than job specific").

In this case, the jury was presented with evidence of Duncan's personal characteristics, education, work history, and the available job market in order to assess whether he was excluded from a class of jobs or a broad range of jobs across classes. It does not matter that WMATA disputed some of what Duncan offered; what matters is that there was evidence in the record supporting Duncan's claim. I agree with my colleagues that Duncan did not present the strongest case possible. However, I believe that there was enough

before the jury to justify its verdict in his favor.

## C. The jury reasonably determined that Duncan was substantially limited in the major life activity of working

There is no serious doubt that Duncan was physically impaired. Dr. Harvey N. Mininberg, an orthopedic surgeon, diagnosed Duncan with degenerative disc disease. *See* Trial Transcript at 18 (May 20, 1997). After he was injured while working for WMATA, Dr. Mininberg authorized Duncan to return to work, with the restriction that Duncan not lift more than approximately 20 pounds. *See id.* at 25. Dr. Najmaldin O. Karim, a neurosurgeon, confirmed both the diagnosis and the lifting restriction. *See id.* at 122, 127. Duncan alleged that this physical impairment substantially limited him in the major life activity of working. Specifically, Duncan claimed that as a result of his physical impairment, he was precluded from the classes of jobs that included medium, heavy, and very heavy lifting.

There was sufficient evidence in the record for a reasonable jury to determine that, based on Duncan's education, training, work history, and efforts to find another job, Duncan's physical impairment substantially limited his ability to work. Duncan never received a high school diploma or completed his GED. He went to trade school for a year and a half, but never finished the training. He had no other formal training or education. He had no computer training. He had no clerical or office skills. He could barely type. *See* Trial Transcript at 127–28 (May 19, 1997).

Duncan was employed in heavy labor jobs throughout his working life. Before working for WMATA, he worked in furniture factories, in a box company, in a glass company, in construction, and in a company that provided the physical settings for functions and meetings. He was a physical laborer. Every one of his jobs involved significant lifting.

After Duncan injured his back while working for WMATA and WMATA terminated him, Duncan sought jobs that were of a light duty nature. Duncan testified that during the nine months he was receiving unemployment compensation, he looked for jobs that were not strenuous. *See id.* at 129. With his back injury, Duncan knew he could not perform the kinds of work he had performed previously. He testified that he could not go back and work as a laborer in construction, or as a packer at a glass company or furniture company, as he had before. *See id.* at 136.

Duncan testified that, in order to receive unemployment compensation, he was required to submit applications in search of other employment. *See id.* at 129. Although he could not recall the specific jobs for which he applied, Duncan testified that during his nine months on unemployment he would check the unemployment listings, and call jobs he thought he could do. He would ask prospective employers what the jobs entailed. If the description of a job included significant lifting that he knew he could not do, he would not inquire further. *See id.* at 130.

Although he wanted to work full time, Duncan was not able to find full-time employment. He ended up accepting a part-time job with Hertz, moving cars after customers dropped them off. He accepted the job even though it paid $5.75 an hour, approximately one-third what he earned working for WMATA. *See id.* at 135.

As noted above, Duncan should have been offered the parts runner job when it became available. He had performed the job in the past; he was fully qualified and physically able to perform the work; and he had seniority among the competing candidates. WMATA never offered an adequate explanation for its failure to accommodate Duncan, despite knowing of his disability and having a position available for him to perform. Indeed, the only excuses offered by WMATA were that Duncan never furnished medical evidence to

support his disability and that Duncan never really sought an accommodation. The jury obviously rejected each of these claims; and, based on the record before us, it is easy to understand this, for WMATA's claims are patently specious.

## II. Conclusion

Based on the evidence presented at trial, the jury reasonably determined that Duncan's physical disability substantially limited him in the major life activity of working. The jury verdict should stand and the judgment of the District Court should be affirmed.